**In the Matter of Angelo P. CRETELLA, Debtor.**

**No. 84CV3647.**

United States District Court, E.D. New York.

Nov. 14, 1984.

---

John M. Murray, New York City, for debtor Cretella.

Andrew E. Ullmann, Northport, N.Y., for Anchor Savings Bank.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This action comes before the Court on debtor's motion under Bankruptcy Rule 8005 for a stay pending his appeal from the decision of Chief Judge Duberstein of the U.S. Bankruptcy Court for the Eastern District of New York. At oral argument on September 7, 1984, this Court indicated that its inclination was to deny debtor's motion, but agreed to reconsider certain New York property law cases the debtor claimed would substantiate his argument. Having reviewed these cases, this Court remains unpersuaded.

In Judge Duberstein's decision, he ruled that the debtor's house, which had already been sold at a foreclosure sale by the time the debtor had filed a petition in bankruptcy, was no longer property within the debtor's estate even though the deed of sale was formally conveyed only after the debtor had filed his bankruptcy petition. *In the Matter of Cretella*, 42 B.R. 526 (Bankr.E.D.N.Y.1984). In short, he held that the house was not among the assets eligible to be sheltered under the debtor's bankruptcy petition.

Under the U.S. Bankruptcy Code, the assets of a debtor's estate are determined with reference to state law. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (construing 11 U.S.C. § 541 (1984)).[1] When deciding whether to issue a stay pending an appeal from a Bankruptcy Court's determination of the assets of a debtor's estate, a court must consider four factors: (1) the likelihood that the party seeking the stay will prevail; (2) the prospect of irreparable injury to the moving party which might result without the stay; (3) the relative certainty that no substantial harm would come to other parties if the stay were issued; and, (4) the relative absence of harm to the public inter-

---

1. The events of this case are in no way affected by the new Bankruptcy Amendments of 1984 which do not go into effect until October of 1984.

est if the stay were granted. *In re Parr*, 1 B.R. 453, 455 (Bkrtcy.E.D.N.Y.1979) (construing Bankruptcy Rule 8005, 11 U.S.C.).

■ As for the first factor, the debtor has failed to persuade this Court of the likelihood of his proving that Judge Duberstein's application of New York property law was incorrect. The debtor begins with the proposition that New York law has been "misapplied" in his case as well as in several recent bankruptcy court opinions. *See, e.g. In re Ghosh*, 38 B.R. 600 (Bkrtcy. E.D.N.Y.1984); *In re Smith*, 7 B.R. 106 (Bkrtcy.W.D.N.Y.1980); and, *In re Butchman*, 4 B.R. 379 (Bkrtcy.S.D.N.Y.1980). Relying on several older New York State court opinions, *inter alia Belsid Holding Corp. v. Dahm*, 12 A.D.2d 499, 207 N.Y. S.2d 91 (1960) and *Nutt v. Cuming*, 155 N.Y. 309, 49 N.E. 880 (1898), the debtor argues that under a proper application of New York law, he should have been permitted to retain a property interest in the house after the foreclosure sale and until the conveyance of the deed confirmed the sale. While it is not beyond peradventure that so many courts could have strayed in their understanding of New York law, Judge Duberstein's well-reasoned opinion refutes any notion that the bankruptcy courts have been "misapplying" New York's property law.[2]

As for the second factor, the prospect of irreparable injury to the moving party, the debtor wishes to prevent the transfer of the premises from which he has already been evicted, to a bona fide purchaser for value. This transfer would only represent irreparable harm to the debtor if one assumes he has a viable interest remaining in the property. As Judge Duberstein held and this Court affirms, the foreclosure sale cut off forever his property rights in the house.[3]

The third factor presents the issue of whether or not the issuance of a stay would present substantial harm to other parties. As noted above, this argument again requires the presumption that the debtor retained a viable property interest. However, as the debtor retained no such interest, it should be clear that issuing a stay would interfere with the property rights of the person who purchased the house at the foreclosure sale; chief among these rights being the new owner's right to free alienation.

■ As for the fourth factor, the debtor has not demonstrated that a stay would produce "no harm" to the public interest. Contrary to debtor's assertion that the public interest would be fostered by a stay, it would seem obvious that some uncertainty would fall on future foreclosure sales. More importantly, it would also create uncertainty as to the definite time at which a debtor may properly shelter property by a bankruptcy petition. Although the debtor now claims before this Court that there has been no clear determination as to the date on which his property was protected by his petition in bankruptcy, it would seem that that date was definite enough, only he was unfortunate enough to have missed it. As Judge Duberstein emphasized, Chapter 13 filings permit debtors the opportunity to prevent the loss of their homes, but only as long as the petition in bankruptcy has been filed prior to the foreclosure sale. *In the Matter of Cretella*, at 532.

■ Finally, it is difficult for this Court to invoke its equity powers in the present

**2.** After analyzing and applying New York law to the debtor's case, Judge Duberstein went on to note that the only way that the debtor could have retained a legal or equitable interest in the property without the formal transfer of title having taken place, would have been if he had retained a right of redemption. While other states have recognized the right of a debtor to reinstate a mortgage after a sale, but prior to the passing of a deed, New York is not one of these states which have such redemption statutes. In fact, Judge Duberstein pointed out that

New York's redemption statute, the Mortgage Redemption Act which had provided that a mortgagor had the right to redeem from a mortgage foreclosure sale for a period of one year, was repealed in 1838. Under present New York law, an owner of equity redemption has a right to redeem at any time prior to the foreclosure sale. *In the Matter of Cretella*, at 531–532.

**3.** See id.

case because even the debtor has taken actions which seem inconsistent with the objective of helping himself. By way of illustrating his reluctance to draw on equity powers, Judge Duberstein observed that after the foreclosure action had commenced, the debtor borrowed approximately $50,000 in March of 1984 from a corporation controlled by him, no part of which was applied to the outstanding mortgage which had been in arrears as far back as June of 1983. *In the Matter of Cretella,* at 532–533.

For the reasons set forth above, the motion is denied.

SO ORDERED.